IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mandy Tack,                 :
           Petitioner     :
                         :
        v.                :   No. 1134 C.D. 2021
                         :   Submitted: March 24, 2023

Unemployment Compensation   :
Board of Review,            :
           Respondent   :

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE LORI A. DUMAS, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE DUMAS                            FILED: June 22, 2023

Mandy Tack (Claimant) has petitioned this Court to review the adjudication of the Unemployment Compensation Board of Review (Board), which affirmed the decision of the Referee that Claimant was ineligible for unemployment benefits. After careful consideration, we find that substantial evidence supports the Board's conclusion that Claimant's three no-show, no-call absences constituted willful misconduct under Section 402(e) of the Unemployment Compensation Law (the Law)[1] and that the Referee properly dispensed Claimant's due process rights at the hearing. Accordingly, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee is ineligible from compensation for any week that her unemployment is the result of her discharge from work due to willful misconduct.

# I. BACKGROUND[2]

Claimant was employed as a direct support professional at Valley Community Services (Employer) from April 10, 2019, through October 31, 2019. Following a series of unexcused absences, Employer discharged Claimant. Claimant sought unemployment benefits, which the UC Service Center denied, finding her actions constituted willful misconduct under Section 402(e) of the Law.[3] Claimant appealed to the Referee.

At the Referee's hearing, Employer established that it maintained a written attendance policy that three consecutive no-show, no-call absences constituted a major rule violation that may result in the immediate discharge of an employee. Further, Claimant did not report to work or call off from work on October 2, 2019, October 6, 2019, and October 8, 2019. Appearing *pro se*,[4] Claimant disputed the alleged absences, but the Referee did not credit her testimony.

Claimant appealed to the Board, which ultimately resolved any conflict in the evidence in Employer's favor. The Board concluded that Claimant committed willful misconduct and rejected Claimant's assertions that the Referee had denied her a meaningful opportunity to present her case. Accordingly, the Board affirmed the Referee's decision. Claimant timely petitioned this Court for review.[5]

---

[2] Unless stated otherwise, we adopt the factual background for this case from the Board's decision, which is supported by substantial evidence of record. *See* Bd. Dec., 9/16/21.

[3] Based on Claimant's initial Internet claim, the UC Service Center denied benefits because of Claimant's *fighting*. *See* Notice of Determination, 1/7/21, at 1; *see* Notes of Testimony (N.T.) Hr'g, 2/25/21, at 24. However, substantial evidence supports the Board's finding that Claimant was discharged due to her violation of Employer's attendance policy. *See* Bd. Dec., 9/16/21, at 1.

[4] Claimant retained counsel prior to appealing the Referee's decision to the Board.

[5] On appeal, our review is limited to "determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Pierce-Boyce v. Unemployment Comp. Bd. of Rev.*, 289 A.3d 130, 135 n.4 (Pa. Cmwlth. 2022).

## II. ISSUES

Claimant asserts that the Board's findings are not supported by substantial evidence. *See* Claimant's Br. at 5, 9-14. In support of this argument, Claimant contends that Employer's disciplinary scale was not properly enforced pursuant to its policy. *Id*. at 8. In effect, Claimant argues that the policy was unclear. *Id*. Additionally, according to Claimant, the Referee failed to afford her a meaningful opportunity to cross-examine witnesses and present her defense at the hearing. *Id*. at 5, 14-15.

## III. DISCUSSION

### A. Substantial Evidence

In her first issue, Claimant contends that substantial evidence does not support the Board's finding that she was terminated for willful misconduct. *See* Claimant's Br. at 9-14. According to Claimant, Employer did not prove the existence of a policy informing employees that they would be terminated after three no-show, no-call absences. *Id*. at 11. She also maintains that Employer failed to satisfy its burden of proving willful misconduct because it submitted insufficient evidence to prove that she had three no-show, no-call absences in violation of this policy.[6] *Id*. at 11-12. We reject these claims.

---

[6] For the first time, Claimant also asserts the "remoteness doctrine," claiming that the delay between her alleged rule violation and subsequent termination undermined the Board's conclusion that she had committed willful misconduct. *See* Claimant's Br. at 9. In willful misconduct cases, an employer is precluded from seeking a denial of benefits where there is an "*unexplained substantial delay between the claimant's misconduct and the employer's act to terminate the claimant*," that is not caused by a lengthy administrative process and where no evidence exists that the employer condoned the behavior at issue. *Raimondi v. Unemployment Comp. Bd. of Rev.*, 863 A.2d 1242, 1247 (Pa. Cmwlth. 2004) (emphasis in original). However, Claimant failed to preserve this issue in her appeal to the Board, and in so doing, deprived Employer of the opportunity to explain the delay. *See* Claimant's Pet. For Appeal from Referee's Dec./Order, 03/17/21. Issues not raised before the Board are deemed waived on appeal. *Hubbard v. Unemployment Comp. Bd. of Rev.*, 252 A.3d 1181, 1186 (Pa. Cmwlth. 2021).

Substantial evidence is relevant evidence that a reasonable person may accept as adequate to support a finding. *Pierce-Boyce v. Unemployment Comp. Bd. of Rev.*, 289 A.3d 130, 136 (Pa. Cmwlth. 2022). When there is substantial evidence to support the Board's findings, they are conclusive on appeal, even if there is contrary evidence of record. *Cambria Cnty. Transit Auth. ("CamTran") v. Unemployment Comp. Bd. of Rev.*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019) (*CamTran*). The Board is the ultimate factfinder, entitled to make its own determinations on evidentiary weight and witness credibility, and free to accept or reject the testimony of any witness, in whole or in part. *Id*. Resolution of credibility questions and evidentiary conflicts within the Board's discretion "are not subject to re-evaluation on judicial review." *Id*. (internal citation omitted).

On appeal, we are bound to examine the testimony in the light most favorable to the prevailing party, affording that party the benefit of all inferences that can be logically and reasonably drawn from the testimony. *Id*. Whether the record contains evidence to support findings other than those made by the factfinder is irrelevant; "the critical inquiry is whether there is evidence to support the findings actually made." *Sipps v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 479, 484 (Pa. Cmwlth. 2018).

Willful misconduct is defined as (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of an employer's rules; (3) disregard of behavioral standards that an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations. *Pierce-Boyce*, 289 A.3d at 135. An employer must prove the existence of a work rule, the reasonableness of the rule, the claimant's

4

knowledge of the rule, and the claimant's subsequent violation of the rule. *Id*. at 136.[7]

Employer's personnel policy requires its employees to provide notice of absences or tardiness to their supervisor "as far in advance as possible." *See* Emp.'s Hr'g Docs., 2/18/21, "Personnel Policy," at 7 (Employer's Policy). The policy lists "major rule violations," which may subject an employee to "immediate discharge." *Id*. at 14. One such violation is the "[f]ailure to report for duty, or follow [Employer's] call off policy, for three (3) consecutive scheduled work days." *Id*. at 15. Claimant signed Employer's policy, involving the exact conduct alleged here, in April 2019. *Id*. at 19. As such, there is substantial evidence that Employer had an attendance policy, and that Claimant knew of the policy.[8] *See Pierce-Boyce*, 289 A.3d at 136.

Additionally, there is substantial evidence to support the Board's finding that Claimant violated Employer's attendance policy. *See id.* Employer's program manager testified that she was at work on the three days in question and personally observed Claimant's absences. N.T. at 20. The record also reveals that Claimant violated Employer's policy on at least *seven* prior occasions (five times for attendance-related issues and twice for unsatisfactory performance), for which Employer employed numerous disciplinary tactics, including warnings, written reprimands, and suspensions of varying lengths. *See* Emp.'s Hr'g Docs., 2/18/21, "Disciplinary Action," at 3-9. This is further supported by a post-discharge email

---

[7] Once an employer satisfies its burden that the claimant engaged in willful misconduct, the burden shifts to a claimant to show that her actions were justified or reasonable under the circumstances, otherwise known as "good cause." *Pierce-Boyce*, 289 A.3d at 135.

[8] Although Claimant does not challenge the reasonableness of Employer's policy, we nevertheless recognize that its rule is "appropriate to pursue [its] legitimate interest" of ensuring timely attendance of its employees. *Chambersburg Hosp. v. Unemployment Comp. Bd. of Rev.*, 41 A.3d 896, 900 (Pa. Cmwlth. 2012).

written by Employer's program manager, explaining that she afforded Claimant "numerous chances," even before issuing any disciplinary paperwork, and "every chance to correct her behavior, with no improvement." *See id.*, "Email – 2/11/21," at 1. Viewing the testimony in the light most favorable to Employer as the prevailing party, *see Sipps*, 181 A.3d at 484, we conclude that substantial evidence exists to support the Board's finding that Claimant's violation of Employer's policy constituted willful misconduct. *See Pierce-Boyce*, 289 A.3d at 136-39.

Although Claimant's assertions *could* support a finding that she worked on October 2, 6, and 8, the Board rejected this testimony. Claimant's outright denial of any no-show, no-call absences (and insinuation of confusion due to her complicated schedule, *see* N.T. at 21), was refuted by the testimony of Employer's program manager. N.T. at 20. Faced with competing narratives from Claimant and Employer, the Board credited the testimony of Employer's program manager that Claimant did not call-off or attend work on three occasions. On appeal, we are bound by the Board's resolution of evidentiary conflicts and credibility determinations if they are supported by substantial evidence, which is clearly present here. *CamTran*, 201 A.3d at 947.

Further, Claimant essentially argues that the policy is unclear because Employer should have initially suspended her following the first alleged unexcused absence (October 2). Claimant's Br. at 8. We disagree. First, Claimant denied Employer the opportunity to impose a lesser sanction by having subsequent unexcused absences on October 6 and October 8. *See* Bd. Dec., 9/16/21 at 2 (finding that Claimant lacked good cause for three no-show, no-call absences). Second, Employer has no obligation to strictly adhere to the disciplinary progression advanced in its policy. *See* Emp.'s Policy at 8. Although the policy cites suspension

6

as *one* disciplinary measure in the event of one no-show, no-call absence, it also recognizes termination as *another* potential discipline for the same offense.[9]  *Id.* Moreover, the policy affords Employer the discretion to choose the appropriate level of discipline and explicitly does not require that an employee "pass through any particular level of discipline before any other level of discipline is initiated."  *Id*. at 7.  Accordingly, the policy was sufficiently clear to put Claimant on notice of the potential disciplinary consequences that may result from an unexcused absence.  *See generally* Emp.'s Policy.

### B. Due Process

Next, Claimant contends that the Referee failed to comply with her due process rights as a *pro se* litigant at the hearing.  *See* Claimant's Br. at 15. Specifically, Claimant maintains that the Referee did not (1) advise her of her rights or afford her a meaningful opportunity to cross-examine Employer's witnesses, (2) permit her to offer a closing statement, and (3) allow her to otherwise present her claim.[10]  *Id.*  Our thorough review of the transcript reveals these assertions to be meritless.

Parties are entitled to due process rights in an administrative proceeding for unemployment compensation benefits.  *Henderson v. Unemployment Comp. Bd. of Rev.*, 77 A.3d 699, 715 (Pa. Cmwlth. 2013).  Due process "requires notice and an

---

[9] "Any employee absent from work who fails to call [Employer] may be reprimanded, suspended, *terminated*, [or] lose one (1) day's pay." Emp.'s Policy at 8 (emphasis added).

[10]Also, to the extent such argument is raised, we reject any contention that Claimant was denied the opportunity to present witnesses at the hearing.  Claimant's Br. at 12.  The hearing notice advised the parties of their responsibility to notify their witnesses of the hearing time and date and file subpoenas in advance of the hearing if a witness refused to testify.  *See* Notice of Hr'g w/ Attachs., 2/2/21, at 1-3. The Referee attempted to reach Claimant's witness twice. N.T. at 2-3.  It was Claimant's obligation, and not the Referee's, to ensure that her testifying witnesses were prepared and available at the time of hearing.

opportunity to present evidence and legal argument." *Massive v. Unemployment Comp. Bd. of Rev.*, 255 A.3d 702, 708 (Pa. Cmwlth. 2021). The Board's regulations provide that a tribunal must advise *pro se* litigants of their rights, aid in the examination and cross-examination of witnesses, and afford "every assistance compatible with the impartial discharge of its official duties." 34 Pa. Code § 101.21.

A referee discharges her due process obligation by informing the claimant of her rights: the right to counsel, the right to cross-examine adverse witnesses, and the right to present witnesses on her own behalf. *Frimet v. Unemployment Comp. Bd. of Rev.*, 78 A.3d 21, 24-5 (Pa. Cmwlth. 2013). A referee need not assume the role of claimant's advocate and is not required to advise a claimant on evidentiary questions or points of law. *Stugart v. Unemployment Comp. Bd. of Rev.*, 85 A.3d 606, 609 (Pa. Cmwlth. 2014). A layperson choosing to represent herself assumes the risk that her "lack of expertise and legal training will prove [her] undoing." *Skotnicki v. Ins. Dep't*, 146 A.3d 271, 282, n.14 (Pa. Cmwlth. 2016) (internal citation omitted).

If a referee's failure to assist a claimant in developing a factual record prejudices a claimant, the Court should reverse a decision adverse to the claimant. *Ruffner v. Unemployment Comp. Bd. of Rev.* 172 A.3d 91, 97 (Pa. Cmwlth. 2017). Yet, "[a]bsent a showing the referee improperly refused to admit competent and material evidence, a claimant is not deprived of due process." *Hueber v. Unemployment Comp. Bd. of Rev.*, (Pa. Cmwlth., No. 1342 C.D. 2010, filed Mar. 18, 2011) (unreported), slip op. at 8-9, 2011 WL 10845766, at *3-4 (finding that the referee's limitation of the claimant's testimony to the period surrounding her

8

resignation was proper and that the claimant failed to offer testimony beyond a few generalized statements to support a particular issue).[11]

The transcript reveals that at the outset of the hearing, the Referee advised Claimant of her rights, including the right to cross-examine adverse witnesses, and that Claimant confirmed her understanding of these rights before the hearing proceeded. *See* N.T. at 5.[12] Additionally, the Referee gave Claimant substantial guidance during her cross-examination of Employer's witnesses. On multiple occasions, the Referee guided Claimant's cross-examination by asking if Claimant had further questions for the witnesses, *see* N.T. at 19-21, interjected to seek clarification of her questions, *see id.* at 11-12, and went as far as asking questions on Claimant's behalf, *see, e.g.*, *id.* at 20 ("I'm going to help try to help [sic] Claimant reword her question"). Claimant was afforded the opportunity to provide a closing statement and did so. *Id*. at 26.

The Referee thoroughly guided Claimant through her case presentation: advising her on raising a legal objection, explaining the burden of proof and hearing process, and directing her testimony to ensure that Claimant stayed on track of the

---

[11] We cite unreported opinions for their persuasive value. *See* Pa. R.A.P. 126(b)(1); 210 Pa. Code § 69.414(a).

[12] Their dialogue is as follows:

> R: I'll remind you of your rights. You have the right to be represented by an attorney or a nonlegal representative of your choice. You have the right to present evidence, to testify, and to present the testimony of witnesses on your behalf, as well as a right to question anyone who would testify against you. [Claimant], do you understand your rights?
>
> C: Yes.

N.T. at 5.

9

relevant issues on appeal. *See generally id.* at 11-25.[13] Appropriately, the Referee did not assume the role of Claimant's advocate, *see Stugart*, 85 A.3d at 609, but nevertheless dispensed of "every assistance compatible with the impartial discharge of its official duties." 34 Pa. Code § 101.21. As such, Claimant was afforded sufficient opportunity to present her claim, *see generally* N.T. at 11-25, and the Referee complied with the Board's regulations to afford her due process rights at the hearing. *See* 34 Pa. Code § 101.21.

## IV. CONCLUSION

In closing, we hold that substantial evidence exists to support the Board's findings that Claimant violated Employer's attendance policy which constituted willful misconduct under Section 402(e) of the Law, 43 P.S. § 802(e). Further, the Referee complied with Claimant's due process rights at the hearing. Accordingly, we affirm.

LORI A. DUMAS, Judge

---

[13] Directing this Court to her cross-examination of Employer's program manager, Ms. Bury, at the hearing, Claimant contends that the Referee rejected her "numerous attempts," to present "highly relevant" evidence of credibility, bias, and her personal relationship with Ms. Bury. Claimant's Br. at 12, 14-15. The evidence of record does not support this argument. Instead, the testimony reveals Claimant's continual attempts to testify rather than question Ms. Bury and the Referee's efforts to assist Claimant. *See* N.T. at 18-21.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mandy Tack,                          :
                    Petitioner       :
                                     :
          v.                         :   No. 1134 C.D. 2021
                                     :
Unemployment Compensation            :
Board of Review,                     :
                    Respondent       :

# **O R D E R**

AND NOW, this 22nd day of June, 2023, the order of the Unemployment Compensation Board of Review, entered September 16, 2021, is AFFIRMED.

_____
LORI A. DUMAS, Judge